TENNESSEE GAS TRANSMISSION CO., a Delaware Corporation, Plaintiff, v. CLEVELAND TRUST CO. et, Defendants.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v. WARD et, Defendant.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v. EDGERTON et, Defendant.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v. ZELLERS et, Defendants.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v. SCHWAB, Defendant.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v. EATON et, FIRESTONE TIRE & RUBBER CO., New Deft., Defendants.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v. COPE et, Defendants.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v. DELL et, Defendants.

Probate Court, Columbiana County.

Nos. 49019, 49020, 49021, 49022, 49023, 49024, 49047, 49048.
Decided April 24, 1953.

266

## OPINION

By TOBIN, J.

The Defendant, by its Demurrer, has raised two questions:—

I.

PLAINTIFF CORPORATION DOES NOT HAVE THE PRO-CEDURAL RIGHT TO MAKE THE APPROPRIATION IN THE JURISDICTION OF THE FORUM, BECAUSE ONLY THOSE CORPORATIONS SPECIFICALLY AUTHORIZED BY OHIO STATUTE TO MAKE THE APPROPRIATION HAVE SUCH RIGHT WITHIN THE MEANING OF §11046 GC, AND NO OHIO STATUTE AUTHORIZES PLAINTIFF CORPORATION TO MAKE THE APPROPRIATION.

II.

PLAINTIFF DOES NOT HAVE A VALID FEDERAL SUB-STANTIVE RIGHT TO APPROPRIATE, IN THAT SECTION 7 (h) OF THE FEDERAL NATURAL GAS ACT, IF APPLICABLE HERE BY REASON OF ANY SUPPOSED STATUTORY GRANT OF THE PROCEDURAL PORTION OF OHIO'S POWER OF EMINENT DOMAIN, IS UNCONSTITUTIONAL AND VIOLA-TIVE OF THE FIFTH AND TENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, AND **OHIO CON-STITUTION, ARTICLE I, SECTION 19.**

I will discuss this in its reverse order.

This Court adopts the reasoning and decision of Thatcher v. Tenn. Gas Co., 180 Fed. 2nd, 644. The denial of the Writ of Certiorari in that case—340 U. S. 289, 95 L. Ed. 609—is indica-tive to this Court that this matter has been passed upon by the Supreme Court of the United States and has resolved the

Constitutional questions involved. The reasoning in this case is persuasive to this Court. Therefore, this Court, by adopting the decision and reasoning of the Thatcher case, decides specifically that the Congress had the Constitutional right to pass the Natural Gas Act of 1938 and 1942 and its subsequent amendment 1947; that said Act is constitutional as being a regulation of Interstate Commerce; that the transportation of gas from Texas to and beyond Columbiana County, Ohio, is Interstate Commerce; that the granting of the power of eminent domain to corporations acting under this Act is constitutional as

"proper to make provisions whereby the full statutory scheme of control and regulation could be made effective by the grant to such company of the right of eminent domain. The possession of this right could well be considered necessary to insure ability to comply with the Commission requirement as well as with all phases of the statutory scheme of regulation." Page 647 of Opinion in Thatcher case—180 Fed. 2nd, 644.

That this is not a taking of private property for private use, but is within the public use.

The contrary view would, of necessity, condemn the gas deposits in Texas to remain there. The fact that this company is the "wholesaler," taking said gas from its place of origin, in Texas, to points in Ohio, Pennsylvania and beyond, and making them available to the public, most assuredly does not make this corporation any less a public one. This Court is assuming this fact, that said Plaintiff transports to these parts beyond Texas for exclusive resale to public utility Gas Companies in the various states of ultimate destinations, or, in these states of ultimate destinations, final sale is made available by the Plaintiff to the public generally and indiscriminately as any public utility must do. If this fact is wrongly assumed under Plaintiff's statement in its Petition "and in the sale of such gas for ultimate public use by the residents of said states" and said sale is made, not exclusively to state controlled public utilities or is not made available generally and indiscriminately to the public, but is resold directly to private corporations or persons etc. under private agreements, then a contrary view would be held by this Court.

This Court would like to draw Counsels' attention to the case of West v. Kansas Natural Gas Company et al, 221 U. S. Supreme Court Reports, Page 220, 55 L. Ed. 716. Therein a Kansas statute, which, among other things, conferred exclusive rights to transport gas by pipelines and gave exclusive right of eminent domain, in this field, to domestic corporations, and denied these rights to foreign corporations, was found to be unconstitutional as an unjustified interference with

interstate commerce. This case was decided in 1911. Justice McKenna uses these significant words:—

"No state by the exercise of, or by the refusal to exercise, any and all its powers may prevent or unreasonably hinder, interstate commerce within its borders in any article thereof." "No state, by the exercise of or by the refusal to exercise, any and all its powers may substantially discriminate against or directly regulate interstate commerce or the right to carry it on."

Justice McKenna, replying to the contention that Congress had not granted the right, in these type cases states, "the inaction of Congress is a declaration of freedom from state interference with the transportation of articles of legitimate interstate commerce." If this is so, that inaction by Congress gives freedom from state interference, most assuredly action in the form of the Natural Gas Act certainly preempts this field. Thus, this Act in all its forms to include 7(h) of said Act is a legitimate regulation of interestate commerce.

This Court, then, has found that:—

1. The Natural Gas Act of 1938 as amended, is constitutional as an exercise of the powers of Congress over interstate commerce and that the movement of gas by pipelines across state lines is interstate commerce.

2. That this Act is a proper regulation of interstate commerce, and not Congress entering into interstate commerce.

3. That the Federal government has the power of eminent domain and may delegate same to proper corporations engaged in interstate commerce of this nature, i. e., transportation of natural gas.

4. That plaintiff corporation is such a proper corporation since it transports gas across state lines for the sale to state regulated public utilities or sells indiscriminately to the public generally in the terminal states. This finding, however, is solely for the purpose of the Demurrer and this Court may change its mind if evidence proves the contrary to be true.

5. That the Federal power of eminent domain must, of necessity, be exercised within a state's borders inasmuch as the Federal Government, generally speaking, has no property within its borders that is not also within the borders of some state (exceptions being the territories and the District of Columbia).

Since it has long been settled that the Federal Government can so delegate its power of eminent domain to a corporation, and, within the limits it grants said power to said corporation, said corporation may exercise same within any states; then the plaintiff corporation, having been so granted said power

of eminent domain under the Natural Gas Act, may exercise the same for its proper purpose within this state. Williams v. Transcontinental, 89 Fed. Supp. 485. Thus, this Court holds that the plaintiff corporation has the substantive right to appropriate or condemn property for its proper use in the State of Ohio and this county, said right being derived from the Federal Government by virtue of the Natural Gas Act. Any other consideration would, in effect be a denial to the Federal Government to effectively regulate this form of interstate commerce, i. e., the transportation of gas across state lines.

Having decided the second part of the Defendants' argument, this Court will now discuss and decide the first argument of the Defendant, namely:

PLAINTIFF CORPORATION DOES NOT HAVE THE PROCEDURAL RIGHT TO MAKE THE APPROPRIATION IN THE JURISDICTION OF THE FORUM, BECAUSE ONLY THOSE CORPORATIONS SPECIFICALLY AUTHORIZED BY OHIO STATUTE TO MAKE THE APPROPRIATION HAVE SUCH RIGHT WITHIN THE MEANING OF §11046 GC, AND NO OHIO STATUTE AUTHORIZES PLAINTIFF CORPORATION TO MAKE THE APPROPRIATION.

The right to use the State Courts is amply discussed in U. S. v. Jones, 27 L. Ed. 1015, at page 1017, 109 U. S. 1015 (see this Court's opinion page 5, 6). The pertinent language to be considered now is "against the consents of the States." (Page 1017, U. S. v. Jones.)

Chappell v. U. S. 40 L. Ed. at page 510 also uses these words "proceedings in the Courts of the States with its consent."

A careful study of the Defendants' first argument indicates that it is directed to these above quoted words.

In other words, the entire argument of Defendants is this: —That the legislative history, the present statutes and the Constitution of Ohio permit only those Ohio corporations or those other corporations to whom the State of Ohio has granted the right of eminent domain to have the procedural right to use the Ohio Courts to condemn Ohio land. Thus Defendants state that these statutes are indicative that Ohio not only has not consented to the use of its Courts by foreign corporations even with federally derived powers of eminent domain, but has actually prohibited the same and is a direct denial of such a right.

This question the Court discussed amply in its former opinion on the Motion to Dismiss and does arrive at the conclusions expressed on pages 4 through 8 of said Opinion.

The Ohio statutes cited deal with the granting of the sub-

stantive right of eminent domain and naturally deal with Ohio corporations or such foreign corporations as Ohio has granted this right of eminent domain, since Ohio could only grant its own power of eminent domain. It quite naturally had no control over the Federal power or its delegation. Therefore, these statutes are so worded. Are they meant to be also an exclusion from the procedural use of the Courts of such corporations whose sole authority to condemn stems from the Federal power of eminent domain?

There is no specific word of denial of the use of the State courts to such corporations. The language of §11038 GC uses the word "corporations" only without any qualifying words or phrases. So do §11039 and 11042 GC. While it necessarily does not refer to all corporations but only those possessing the right of eminent domain, and, while I think it refers to those corporations given this right by the State of Ohio, it does not necessarily follow that we can read into these statutes a meaning that Ohio has withdrawn all consent to the procedural use of its courts by a corporation who is furthering the power of the Federal government in its regulation of interstate commerce and who has a valid federally granted power of eminent domain.

I have no doubt that the State of Ohio may specifically refuse consent to such uses of its court, but I believe, in the face of years of past cooperation and permissions of such use that it would need do so specifically. I believe and find that all indications have been that such use is permitted and the State has so consented.

There are many examples of this cooperation.

Take the matter of naturalization, purely a Federal government function. Title 8, §357 et seq., of the Federal Act on naturalization gives exclusive jurisdiction to naturalize to the following Courts "U. S. District Courts * * * also Courts of record in any state or territory having a seal, a clerk and jurisdiction in actions at law, as equity, or law and equity, in which the amount of the controversy is unlimited (Fed. Code Ann. 2nd Vol. Page 413).

**Article 10, Section 4 of the Ohio Constitution** states for our Courts of Common Pleas, that "the jurisdiction of the Courts of Common Pleas, and of the Judges thereof, shall be fixed by law."

A careful study of the statutes discloses complete silence on the matter of Ohio granting or withholding from said Court of Common Pleas the right to handle naturalization matters. Yet said Courts have handled such matters in conjunction with the Federal government for many years. Why, in the absence

of any specific directive in the form of a statute authorizing the same?

The answer is found in cooperation between State and Federal government and the use of State facilities, in the absence of a specific denial to do so by the Federal government. Another example would be the Federal Rent Control Act wherein its civil penalties can be enforced in State courts.

In the instant case the Probate Court is empowered to entertain and decide proper cases of condemnation by private corporations with the power of eminent domain. This Court holds that the Ohio statutes that must be complied with for Ohio corporations to prove their substantive right to condemn and fixing the Probate Court, among others, as one of the forums to try the same, do not exclude foreign corporations with federal granted power of eminent domain from the procedural use of said Court when, as in this case, the Federal Act permits said use, and in the absence of a specific Ohio statute denying such use.

Application of U. S. Housing Authority, 11 Ohio Supp. 9, (49 N. E. 2nd 1943—Bd. of Tax Appeals of Ohio) decide that the United States holds property in slum clearance areas as a proprietor and not as a government and so does not come within §13770 GC ceding jurisdiction over such lands to the United States as required in Art. I, Sec. 8, Clause 17 of the Constitution of the United States. The within case deals with Federal eminent domain as used in the regulation of interstate commerce.

To use the Defendants' own division of the problem: The Ohio statutes (exclusive of §11038 et seq. GC) deal with the conferring of substantive rights of eminent domain to certain corporations. Naturally, since Ohio is granting part of its own power of eminent domain, it deals mainly with Ohio corporations.

Sec. 11038 et seq. GC, deals with the procedural right to proceed in the Ohio courts to condemn. Therein, significantly, is not found any words of modification to the word "corporations."

Can we read into the statutes, §11038 et seq. GC, a denial by Ohio of the use of its courts by the licensees of the Federal government? I believe not. While Ohio could validly deny such use to the Federal government itself and for its licensees, I do not believe that this implication can be read into these statutes.

This reasoning, coupled with this Court's adoption of the decision in the Williams case (Williams et al v. Transcontinental Gas Pipe Line Corp., 89 Fed. Supp., page 485) as ex-

pressed in the former opinion of this Court, brings this Court to the decision that the Plaintiff has the procedural right to use this forum.

DEMURRER OVERRULED—Exceptions to all Defendants.